IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LEANN BEST, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) CASE NO. 3:19-CV-897-KFP |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

**I.    PROCEDURAL HISTORY**

Leann Best filed this action under 42 U.S.C. § 405(g) seeking judicial review of an adverse decision of the Commissioner of Social Security after the Administrative Law Judge (ALJ) denied her claim for disability and disability insurance benefits and the Appeals Council denied her request for review. After careful review of the record, the Court concludes the Commissioner's ruling is due to be AFFIRMED.

**II.    STANDARD OF REVIEW**

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and whether the correct legal standards were

---

[1] Kilolo Kijakazi is now the Acting Commission of Social Security and is automatically substituted as a party under Rule 25(d) of the Federal Rules of Civil Procedure. *See also* 42 U.S.C. § 405(g) (providing that an action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

applied. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence is more than a scintilla but less than a preponderance. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's factual findings, the reviewing court must affirm if the decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

### III.   DISCUSSION

#### A.   The ALJ Accorded Proper Weight to Dr. King's Opinion

Best argues that the ALJ did not properly weigh the medical opinion of Dr. Michele King, a one-time examining psychologist, when determining her mental functional capacity, which the ALJ articulated as follows:

> The claimant can perform simple, routine tasks. The claimant cannot do any detailed or complex instructions. The claimant should avoid excessive workloads, quick decision-making, rapid changes, and multiple demands. The claimant is limited to simple work-related decisions involving judgment. The claimant would benefit from casual supervision. She can occasionally interact with the public, but this interaction should be non-intensive. The claimant is limited to simple-work-related decisions involving change, and these changes should be infrequent and gradually introduced. The claimant will be absent from work 1-2 days per month.

R. 16. In evaluating Best, Dr. King noted that she had major depressive disorder, a constricted affect, "somewhat" slow speech, and a history of suicidal thoughts, but she also stated that Best had normal thoughts; full orientation to person, place, and situation; no signs of psychotic hallucinations, delusions, depersonalization, or derealization; no compulsive behaviors; no current suicidal thoughts; good intellectual functioning; and the

2

ability to recall her social security number easily, name the current and most recent past presidents, provide adequate interpretations of simple and complex proverbs, do serial sevens, recall three out of three words, and provide detailed information. R. 21.

Based on her assessment, Dr. King found that Best would have only mild limitations understanding, remembering, or carrying out simple instructions and only mild-to-moderate limitations making judgments on simple work-related decisions, responding appropriately to usual work situations and changes in a routine work setting, and interacting appropriately with the public, supervisors, and coworkers. R. 509–10. The only moderate limitation Dr. King found was the ability to understand, remember, and carry out complex instructions, and the only moderate-to-marked limitation was the ability to make judgments on complex work-related decisions. *Id.* Dr. King stated Best's depressed mood "will impact" her ability to concentrate and persist on task, but she did not state the degree of impact. R. 510. Dr. King also found Plaintiff to have a severe constriction of interest and stated she "would have difficulty functioning independently at this time given the severity of her depression." R. 516.

The ALJ considered Dr. King's assessment and found it to be generally consistent with the RFC articulated in her decision. The Court agrees. Dr. King's findings are substantially similar to the ALJ's determination that Best can perform simple, routine tasks but cannot perform detailed or complex instructions; should avoid excessive workloads, quick decision-making, rapid changes, and multiple demands; is limited to simple work-related decisions involving judgment; would benefit from casual supervision; can occasionally have non-intensive interaction with the public; and is limited to simple-work-

related decisions involving change, which should be infrequent and gradually introduced. The ALJ also noted that Dr. King's findings were consistent with the other medical evidence and with Best's daily activities and that they were indicative of Best's ability to perform the jobs as classified by the vocational expert (VE) who testified at Best's hearing. R. 21–22. However, the ALJ discounted Dr. King's findings of a severe constriction of interest and difficulty functioning independently based on Best's ability to participate in certain daily activities, and she assigned Dr. King's opinion only partial weight. R. 22. Best concedes that the ALJ explained her reason for discounting Dr. King's opinion, but she asserts it was error to rely on Best's daily living activities as a supporting reason to discount Dr. King's opinion regarding independent functioning.

Contrary to Best's argument, social security regulations expressly contemplate consideration of a medical opinion's consistency with other medical and nonmedical sources that support or contradict the opinion, and Eleventh Circuit case law also supports consideration of a claimant's daily living activities. *See* 20 C.F.R. § 404.1527(c)(4) (consistency); *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (ALJ did not err in rejecting opinion of treating physician when opinion was inconsistent with his treatment notes and evidence of claimant's daily activities); *Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 848 (11th Cir. 2017) (finding claimant's reported daily activities supported ALJ's decision not to assign controlling weight to treating physician's opinion).[2] In

---

[2] These cases support consideration of daily activities to reject a treating physician's opinion. As a one-time medical examiner, Dr. King's opinion is not entitled to the deference due a treating physician's opinion under the social security regulations applicable to this case. *Daniels v. Saul*, No. 7:19-CV-01003-RDP, 2020 WL 4922151, at *9 (N.D. Ala. Aug. 21, 2020) (holding that ALJ must state weight given to different medical opinions and supporting reasons but is not required to defer to opinions of one-time examiners)

discounting Dr. King's opinion, the ALJ relied on Best's ability to care for her personal needs without supervision or reminders, spend time playing games and watching television with others, attend her children's extracurricular activities, prepare meals for her children, read, perform household tasks, drive a car, go out alone, shop in stores, and manage her finances. R. 22.[3]

Further, the cases cited by Plaintiff are distinguishable. In *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), the court stated that participation in everyday activities of short duration, such as housework or fishing, does not disqualify a claimant from disability, but the statement was made in the context of determining whether good cause existed to disregard the opinion of a treating physician who stated the claimant was completely disabled. Here, no physician has found Best to be completely disabled, and the ALJ did not use Best's daily living activities as a broad rejection of a treating physician's opinion that she cannot work. The ALJ relied on the daily activities to discount part of a one-time examiner's opinion that was otherwise consistent with the rest of the record and supportive of Best's ability to perform the jobs identified by the VE.

In *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986), the Eleventh Circuit held the Appeals Council erred in relying on the claimant's ability to do household chores

---

(citations omitted); *see also* 20 C.F.R. 404.1527(c)(2) (for cases filed before March 27, 2017, stating more weight is given to medical opinions from treating sources).

[3] On the disability report cited by the ALJ and completed by Best in November 2016, Best also reported that she gets on the computer and checks her email, responds to her daughters' teachers if necessary, takes her medicine as directed, makes sure her children are fed and have what they need, gives her animals food and water and takes them to the vet if necessary, and is able to shop on her computer, count change, handle a savings account, and use a checkbook. R. 246–53.

reject an ALJ's credibility finding. The court found the Appeals Council had ignored evidence that the claimant's daily activities were significantly affected, including medical evidence that she had difficulty standing, fatigue, and blurred vision. *Id*. at 1180. Unlike *Parker*, in this case the ALJ did not use Best's daily living activities to find her more functional than the record as a whole suggests.

For example, the records of Best's treating psychiatrist, Dr. Avind Patel, suggest no difficulties functioning independently. Those records show that Best's symptoms were well controlled with medication and that she had no medication side effects. R. 474. She had an anxious mood and constricted affect; however, she was cooperative and friendly; her speech was clear, coherent, and goal-oriented; her insight, judgment, and impulse control were fair; her memory and recall were good; her intelligence was average; she was oriented to person, place, time, and purpose; and her attention and concentration were aroused and sustained throughout his treatment sessions. R. 474–79 (treatment records for four visits in December 2015 and March, May, and August 2016).

Best resumed treatment with Dr. Patel in February 2017, and the records from that visit show the same findings, including no medication side effects, such as dizziness, drowsiness, grogginess, pain, or confusion. R. 681. The records from her next visit in May 2017 reveal these same findings, but Dr. Patel also stated that Best was able to take care of her children and was "doing very well" in his opinion. R. 683. He further wrote, "Leann is stable and does not have any major issues. She has been depressed in the past because her

ex-husband has been harassing her,[4] but now she is doing much better. She was in a very good mood today." *Id*. In August 2017, Dr. Patel noted that Best felt more depressed because she was off her medication after missing an appointment. R. 685. Her anxiety was controlled on current mediations; she was in no acute distress; she had appropriate dress and hygiene and was cooperative, pleasant, and conversational; she had good eye contact; her thought process was organized, logical, linear, and goal-directed; and she had good insight and judgment. R. 685–87. She mentioned experiencing a crash after taking Vyvanse, but there is no other mention of medication side effects. R. 685.

In September 2017, Dr. Patel noted that Best was "over the anxiety part of court and seems to be doing a little better since her last visit." R. 690. In October, Best asked for an increase in one of her medications and denied any side effects. R. 700. She said she was not motivated or getting out of bed, but all other findings about her appearance, behavior, thought process, cognition, judgment, and insight were the same as previous visits. R. 700–02. In November 2017, Best reported to Dr. Patel that she "felt more like herself now tha[n] she has in a long time," said her medications "helped her a lot," and denied any medication side effects. R. 705. Dr. Patel noted that her anxiety was controlled on medications and that her depression was improving on current medications. R. 706. All other findings were the same as previous visits. R. 705–13. In January 2018, Dr. Patel's records indicate that Best was more depressed but that her anxiety was controlled on medications and she had no medication side effects. R. 715–16. All other findings regarding her appearance, behavior,

---

[4] Best's medical records indicate that she was involved in an ongoing custody dispute with her ex-husband during this time. R. 478, 681, 683.

7

thought process, cognition, judgment, and insight were the same as previous visits. 714–18.

Accordingly, based on records from Best's treating physician, which fail to support a conclusion that Best has difficulty functioning independently, it is clear that the ALJ did not rely on Best's daily activities as a broad rejection of Dr. King's opinion or to find Best more disabled than the record as a whole suggests. She relied on Best's daily activities to discount the opinion that Best has difficulty functioning independently, and the Court finds that substantial evidence supports that determination and the decision to assign partial weight to Dr. King's opinion.

Plaintiff makes one additional argument with respect to Dr. King's opinion. She claims the ALJ failed to explain how she considered the opinion that Best has difficulties understanding, remembering, and carrying out even simple instructions and, thus, ignored a medical opinion contrary to her decision without explanation. Doc. 14 at 4. She claims this error cannot be deemed harmless because there are no jobs Best can perform if she lacks the ability to understand, remember, or carry out even simple instructions. *Id*. The Court disagrees with Best's characterization of Dr. King's opinion. Dr. King did state that Best would have "some difficulty understanding, carrying out, and remembering even simple instructions at this time due to her depression," but in another part of her report she qualified this difficulty as a mild impairment. R. 509, 516. The ALJ did not ignore Dr. King's limitation in this area; she specifically referenced the "mild to moderate[5] functional

---

[5] Dr. King assigned mild limitations in handling simple instructions and moderate limitations in handling complex instructions. R. 509.

limitations regarding her ability to understand, remember, and carryout instructions" and found them to be consistent with the mental findings of Best's other doctors and her daily activities. R. 22. In short, a fair reading of Dr. King's report does not include the opinion that Best is unable to understand, remember, or carry out simple instructions, and any argument based on this premise fails.[6]

## B. The ALJ Accorded Proper Weight to the Opinion of Dr. Rodrigues

Best next argues that the ALJ (1) erred by relying too heavily on the opinion of a non-examining state agency psychologist, Dr. Leslie Rodrigues, which was given significant weight by the ALJ and (2) "gave no reason, let alone a good reason," for accepting Dr. Rodigues's opinion. First, the ALJ stated that she assigned Dr. Rodrigues's opinion great weight because it was supported by the record as a whole, explaining that it was consistent with Best's daily activities, her mental improvements with treatment, and Dr. King's mental findings. Thus, any argument that the ALJ did not explain her reasoning fails. Second, noticeably missing from Plaintiff's brief is any reference to an opinion by Dr. Rodrigues to which she objects. She argues that reliance on the opinion was particularly

---

[6] Even if the ALJ had failed to discuss one aspect of Dr. King's opinion, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence" as long as the decision is not a "broad rejection" and enables a court to conclude the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (internal quotation omitted). Here, it is clear from the ALJ's detailed discussion of the evidence that she considered Best's medical condition as a whole and that her decision was not a broad rejection of Dr. King's opinion. R. 21–22. *See Rahman v. Astrue*, No. 1:11-CV-3094-JSA, 2012 WL 5507314, at *6 (N.D. Ga. Nov. 14, 2012) (in case where ALJ did not discuss every part of opinion or give reasons for rejecting every statement in the opinion, noting that "Eleventh Circuit has recognized that an ALJ's failure to give the optimal level of documentation in the written opinion to every aspect of a decision does not justify reversal or remand") (citing *Hutchison v. Bowen,* 787 F.2d 1461, 1463 (11th Cir. 1986) (stating "it is not required that the Secretary mechanically recite the evidence leading to her determination")).

misplaced here because Dr. Rodrigues reviewed records only through August 2016, more than two years before the ALJ's decision and before Dr. King prepared her opinion, but there is no discussion of how records after 2016 contradict Dr. Rodrigues's opinion and no application of case law to the facts of this case. Third, it is evident from the ALJ's decision that she considered Best's entire medical record, and Best does not assert otherwise. Therefore, the fact that certain records were not available to Dr. Rodrigues when she rendered her opinion is of no consequence. *See Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 848 (11th Cir. 2017) (finding no error in weight assigned to state agency consultant who did not have access to certain records because ALJ considered records in decision).

Finally, while state agency consultant opinions are not entitled to deference, their opinions may be entitled to great weight if supported by the record. *See* 20 C.F.R. § 404.1527(e); SSR 17-2p, 2017 WL 3928306, at *3; *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902–03 (11th Cir. 2012). Best does not argue that Dr. Rodrigues's opinion is unsupported by the record, and the Court finds that the opinion is consistent with Best's daily activities and Dr. Patel's opinion as discussed above. It is also consistent with Dr. King's opinion. Dr. Rodrigues opined that Best was not significantly limited in remembering locations and work-like procedures; understanding, remembering, and carrying out short and simple instructions; performing activities within a schedule; maintaining regular attendance and being punctual; sustaining an ordinary routine without special supervision; asking simple questions or requesting assistance; accepting instructions; responding appropriately to criticism from supervisors; and getting along with

10

coworkers and peers. Dr. King similarly concluded that Best would have only mild limitations in understanding, remembering, or carrying out simple instructions; interacting appropriately with the public, supervisors, and coworkers; and responding appropriately to usual work situations and changes in a routine work setting. R. 509–10.

Dr. Rodrigues opined that Best was moderately limited in understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods of time; working with others without being distracted; making simple work-related decisions; completing a normal workday or workweek without interruption from symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; interacting with the general public; and responding appropriately to changes in the work setting. R. 125–27. These findings are similar to Dr. King's determination that Best would have only mild-to-moderate limitations making judgments on simple work-related decisions; would have moderate limitations understanding, remembering, and carrying out complex instructions; would have moderate-to-marked limitations making judgments on complex work-related decisions; and that her depressed mood would impact her ability to concentrate and persist on task. R. 516.

Accordingly, based on Best's daily activities, Dr. Patel's treatment records, and Dr. King's opinion, the Court finds that Dr. Rodrigues's opinion was supported by the record as a whole. Therefore, substantial evidence supports the ALJ's decision to assign great weight to the opinion.

### C.     The ALJ Properly Evaluated Best's Subjective Complaints.

Best argues that the ALJ improperly evaluated her subjective complaints by relying on her ability to engage in daily activities. However, as with the evaluation of medical opinions discussed above, social security regulations and Eleventh Circuit case law support consideration of daily activities when evaluating a claimant's subjective complaints. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. 2010) (holding that, while participation in daily activities for short durations does not necessarily disqualify a claimant, it is not improper for an ALJ to consider them); *Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 880 (11th Cir. 2014) (daily activities of managing personal care, preparing meals, shopping, caring for pets, watching television, using a computer, and socializing with others supported ALJ's credibility determination, even though there was ample evidence supporting a contrary conclusion).

Best alleged problems with memorizing, understanding, following instructions, completing tasks, concentrating, handling stress and changes, and wanting to isolate herself from others. However, as the ALJ noted, she completed disability-related forms by following instructions, understanding each question, recalling relevant information, and providing logical answers. R. 14, 235–42, 246–253. These forms indicate she can care for her personal needs, take medications without reminders, prepare meals, pay bills, shop, drive, read, attend doctor's appointments, take her children to extracurricular activities, provide information about her health, describe her prior work history, follow instructions from healthcare providers, comply with treatment outside a doctor's office or hospital, and

respond to questions from medical providers. R. 14, 235–42, 246–253. The ALJ also noted that she has good communication and interaction with her children and husband, visits places alone, deals appropriately with authority figures; has a good rapport with providers; and was described as cooperative. R. 15. Finally, she took a cruise with her family in July 2017, and, although she testified that her depression and anxiety are so severe that she retreated to her room after a couple of days due to panic attacks, Best reported to a family counselor: "I did ok on the cruise. Had a couple of times when I started worrying but I did like we discussed and I distracted myself with something else." R. 18, 102–03, 636–38. For these reasons, substantial evidence supports the ALJ's decision to discount Best's alleged symptoms based on her daily activities.

Plaintiff next argues that the ALJ erred in making a credibility determination based on a gap in treatment and a period of non-compliance with treatment. The ALJ noted that Best saw Dr. Dixit for mental health treatment in October 2012, was hospitalized in February 2014, was hospitalized in August 2015, and did not resume mental health treatment until December 2015 when she began seeing Dr. Patel. R. 19. The ALJ further noted that Best failed to attend a partial program on a regular basis after being discharged from the hospital but that her later visit with Dr. Patel reflected cooperative behavior, orientation in all spheres, good memory, abstract thinking ability, sustained attention and concentration, and no medication side effects. *Id*.

Best's argument on this point is two-fold. She contends the ALJ had a duty to request records from Dr. Dixit or express a concern to counsel if she felt they were necessary. Of course, this argument implies that additional records from Dr. Dixit exist,

13

but the record is clear that Dr. Dixit treated Best only from May 2012 through October 2012 (R. 305), so there are no records from Dr. Dixit that the ALJ could have requested to fill in any gaps in treatment. She further argues that periods of non-compliance with treatment are frequently a symptom of disability and that any number of reasons could be the reason for the gap in treatment. Best presents generalized case law regarding non-compliance and gaps in treatment, but she fails to apply the law to the facts of this case and fails to assert or cite any evidence supporting another reason for non-compliance or gaps in treatment. Nothing in the record indicates that Best's failure to maintain consistent treatment was more a symptom of her disorder than a sign of its mildness. *Cf. Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1267–68 (11th Cir. 2019) (explaining that doctor's notes were replete with instances of claimant complaining about symptoms and acknowledging need to make psychiatric appointment but failing to do so).

Finally, Best argues that the ALJ erred in discounting her subjective complaints based on records that showed no significant abnormalities when Best was compliant with treatment. Best asserts the ALJ mischaracterized the record, but Dr. Patel's records are clear. According to Dr. Patel and as set forth above, Best's symptoms were "well controlled" on medication, she had no medication side effects,[7] and he described her as "stable" with no major issues. These records constitute substantial evidence supporting the ALJ's determination that Best had no significant mental abnormalities when she was compliant with treatment.

---

[7] Best reported to Dr. King that one of her medications increased her anxiety and that her medications caused fatigue and sleepiness. R. 513, 516. However, Dr. Patel's treatment records consistently indicate that she had no side effects from her medications. R. 475, 479, 681, 683, 705, 710, 715.

In conclusion, because the ALJ articulated clear reasons for discrediting Best's subjective complaints regarding the extent of her limitations and because those reasons are supported by substantial evidence, this Court will not disturb that decision. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (holding that a "clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court"); *see also Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 848–49 (11th Cir. 2017) (upholding credibility finding when daily activities included taking care of her young daughter, cooking, driving short distances, taking care of the family pet, and doing laundry; nature of treatment for bipolar and mood disorders showed missed appointments and treatment that consisted primarily of outpatient medication management; and even during inpatient evaluation plaintiff presented with intact cognitive functioning, attention, concentration, and memory, as well as good insight and judgment, abstract thinking, calculation, and knowledge of information).

### D. The Hypothetical Question Posed to the Vocational Expert Sufficiently Accounted for Best's Limitations.

Plaintiff's final argument is that the hypothetical question posed to the VE did not account for Best's limitation in concentration, persistence, and pace. Doc. 14 at 13. In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit found error because the ALJ neither indicated that medical evidence suggested the ability to work despite this moderate limitation nor otherwise accounted for it. Since *Winschel*, the Eleventh Circuit has recognized that this limitation can be sufficiently accounted for by posing a hypothetical limiting an individual to simple, unskilled work (or something

similar) when the medical evidence demonstrates an ability to perform that work. *Mijenes*, 687 F. App'x at 846 (because medical evidence showed that claimant could perform simple, routine tasks despite limitation in concentration, persistence, and pace, finding limiting of RFC to unskilled work sufficiently accounted for her moderate difficulties in this area); *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 907–08 (11th Cir. 2013) (approving limitation to "simple, one-two step task[s with] only occasional contact with the public, coworkers, and supervisors" as accounting for moderate limitation in concentration, persistence and pace in light of two non-examining psychologists' opinions supporting the finding); *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 951 (11th Cir. 2013) (finding limitation "to one to three step non-complex tasks" sufficiently accounted for moderate limitation in concentration, persistence, and pace); *Washington v. Soc. Sec. Admin., Comm'r*, 503 F. App'x 881, 883 (11th Cir. 2013) (finding limitation "to performing only simple, routine repetitive tasks with up to three-step demands, and only occasional changes in the work setting, judgment, or decision making" was sufficient to account for moderate limitation in maintaining concentration, persistence, and pace); *Scott v. Comm'r of Soc. Sec.*, 495 F. App'x 27, 29 (11th Cir. 2012) (distinguishing *Winschel* and finding that medical evidence demonstrated that ability to engage in simple, routine tasks or unskilled work despite moderate limitations in concentration, persistence, and pace).

In this case, the hypothetical posed to the VE limited Best to "simple, routine tasks," further stating that she "cannot do any detailed or complex instructions," "should avoid excessive workloads, quick decision-making, rapid changes, and multiple demands," and "is limited to simple work-related decisions involving judgment." R. 16. In her decision,

the ALJ cited Dr. Patel's records and Best's ability to engage in daily activities as evidence that she can "focus her attention on simple work activities and stay on task, at a sustained rate, with moderate mental limitations in this area." R. 14. Therefore, the hypothetical posed to the VE is sufficient if the record demonstrates that she can engage in simple, routine tasks despite her limitations in concentration, persistence, and pace.

The medical records of Dr. King and Dr. Patel support a finding that Best can perform simple, routine tasks. As described above, Dr. King's findings showed no declines in Best's ability to memorize, recall words, perform serial sevens, interpret proverbs, and demonstrate normal thoughts. Dr. King indicated that Best's mood would impact her ability to concentrate, persist, and maintain pace, but she also indicated that Best would be only mildly limited in understanding, remembering, and carrying out simple instructions. Dr. Patel's records showed that Best's condition was well controlled on medication, that she was stable and had the ability to care for her children, and that she consistently had clear, coherent, and goal-oriented speech; fair-to-good insight and judgment; good memory and recall; average intelligence; the ability to think abstractly; aroused and sustained attention and concentration; and organized, logical, linear, and goal-directed thought processes.

Best's report of her own activities also supports the conclusion that she can perform simple, routine tasks despite any limitations in concentration, persistence, and pace. On her disability function report completed in November 2016, Best reported that, although her husband helps and does most of the caring for the children and animals, she gets on the computer and checks her email, responds to her daughters' teachers if necessary, sometimes takes her daughter to horseback riding lessons, takes her medicine as directed,

17

buys clothes for her daughters, watches tv with them, attends extracurricular activities, makes sure they are fed and have what they need, gives her animals food and water and takes them to the vet if necessary, and needs no reminders for personal needs or for medicine. Although housework is exhausting and she does not do it often, she is able to do laundry, sweep floors, do dishes, make beds, iron, and dust. She goes outside three to four times per week. Her husband handles the bills because they are overwhelming to her, but she is able to shop in stores and on her computer, count change, handle a savings account, and use a checkbook. The form is eight pages long, and Plaintiff was able to fill out the form by hand, answer all the questions, and provide detailed, logical, and appropriate answers. R. 246–53. She also completed an eight-page work history form by hand and answered those questions with detailed, logical, and appropriate answers. R. 235–42.

The Court finds that Dr. Patel's records, Dr. King's opinion, and Best's daily activities constitute substantial evidence supporting the conclusion that Best can perform simple, routine tasks despite her moderate limitations in concentration, persistence, and pace. Therefore, the ALJ's limitation to simple, routine tasks in the hypothetical posed to the VE sufficiently accounted for Best's moderate limitation in this area. *See Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 871–72 (11th Cir. 2011) (finding hypothetical sufficient because it asked VE to assume an individual who could concentrate for brief periods of time and record included opinions of non-examining consultants that claimant could follow simple instructions, complete simple tasks, make decisions, avoid hazards, and understand, remember, and carry out simple tasks despite the moderate limitation); *Testoni v. Saul*, No. 3:18-CV-842-J-JRK, 2019 WL 3812487, at *5 (M.D. Fla. Aug. 14,

2019) (finding that progress notes indicating plaintiff was alert and oriented; had normal affect, speech, and judgment; was only slightly anxious; had appropriate mood and affect; and had coherent speech and thought-processing constituted substantial evidence supporting ALJ's determination that plaintiff could handle simple, routine tasks); *see Harris v. Saul*, No. 3:19-CV-1181-JRK, 2021 WL 1016128, at *4–5 (M.D. Fla. Mar. 17, 2021) (finding substantial evidence supported ALJ's determination that plaintiff could perform unskilled work and "simple, routine repetitive tasks" despite moderate limitations in concentration, persistence, and pace, citing medical records showing plaintiff was alert and oriented to person, place, and time; was able to follow complex instructions; was polite and appropriate with staff; was able to follow check in procedure correctly; and had normal continuity of thought, coherent thought content, slightly diminished memory, fair judgment and insight, and average intelligence and fund of information).

## IV. CONCLUSION

For the reasons stated above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

DONE this 29th day of September, 2021.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE